**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| FRANCIS J. DOUGHERTY AND ELIZABETH F. DOUGHERTY | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) ) Civil Action No. 13-1972-SLR-SRF |
| A O SMITH CORPORATION, et al., | ) ) ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION**

## I.    INTRODUCTION

Presently before the court in this asbestos-related personal injury action is a Motion to Remand (the "Motion to Remand" or "Motion") filed by the Plaintiffs, Francis J. Dougherty and Elizabeth F. Dougherty ("Plaintiffs"), in response to the notice of removal filed by Defendant Crane Company ("Crane") pursuant to 28 U.S.C. § 1442(a)(1). (D.I. 14) Plaintiffs contend that remand is appropriate because they disclaimed any causes of action that could provide a basis for federal subject matter jurisdiction and, alternatively, that Crane has not met the requirements for removal under Section 1442(a)(1). (D.I. 14 at 2) Crane opposes Plaintiffs' Motion. (D.I. 22) For the reasons that follow, I recommend that the court GRANT Plaintiffs' Motion to Remand.

## II.    BACKGROUND

Plaintiffs filed this action against Crane and other defendants on October 4, 2013, in the Superior Court of Delaware. (D.I. 1, Ex. 1) The Complaint alleges that Francis J. Dougherty ("Mr. Dougherty") developed mesothelioma, among other injuries, as a result of his exposure to asbestos-containing products manufactured by, sold by, distributed by, or otherwise associated with the defendants, including Crane. (Id., Ex. 1 ¶¶ 1-6) Mr. Dougherty was allegedly exposed to such asbestos-containing products while working as a plumber in the U.S. Navy from 1945 to

1946, as a plumber and pipefitter in Wilmington, Delaware from 1950 to 1993, and as a volunteer

fireman in New Castle County, Delaware. (*Id.* ¶ 2)

Plaintiffs' Complaint includes the following disclaimer:

3.     Plaintiffs hereby disclaim any cause of action or claim for recovery that could give rise to federal subject matter jurisdiction under either 28 U.S.C. § 1331 (federal question) or 28 U.S.C. § 1442, subdivision (a)(1) (federal officer). Specifically, Plaintiffs disclaim any cause of action or claim for recovery based on any exposure to asbestos on land that is, or was, a "federal enclave" pursuant to Article I, section 8, clause 17 of the United States Constitution. Plaintiffs also disclaim any cause of action or claim for recovery based on any exposure to asbestos caused by any person or entity acting under the authority of a federal officer or agency.

(*Id.* ¶ 3)

On November 25, 2013, Crane removed the action to this court, pursuant to 28 U.S.C. §

1442(a)(1), the federal officer removal statute. (D.I. 1) Plaintiffs filed the pending Motion to

Remand on December 20, 2013. (D.I. 14) Briefing on the Motion was completed by January 2014.

(*See* D.I. 27)

In their papers filed in support of remand, Plaintiffs assert, among other things:

"Plaintiffs have disclaimed **and hereby waive as the basis for any relief in this case**" **"exposures that may have occurred during Mr. Dougherty's service in the United States Navy from 1945-1947**." (D.I. 14 at 2 (emphasis added))

"To the extent necessary, **Plaintiffs also hereby waive all claims against Crane stemming from Mr. Dougherty's asbestos exposure from any federal government job site, and aboard Navy ships or any other military vessel.**" (D.I. 15 at 4)

## III.    LEGAL STANDARD

The federal officer removal statute permits removal of a state court action to federal court

when, *inter alia*, such action is brought against "[t]he United States or an agency thereof of any

officer (or any person acting under that officer) of the United States or of any agency thereof, sued

in an official or individual capacity for any act under color of such office." 28 U.S.C. § 1442(a)(1).

The party removing an action to federal court bears the burden of proving that removal is appropriate. *See Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990). In the Third Circuit, the provisions of the federal officer removal statute are to be "broadly construed."[1] *Sun Buick, Inc. v. Saab Cars USA, Inc.*, 26 F.3d 1259, 1262 (3d Cir. 1994). The Supreme Court has explained that "the right of removal is absolute for conduct performed under color of federal office, and has insisted that the policy favoring removal 'should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).'" *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981) (citation omitted).

To properly establish removal under Section 1442(a)(1), a defendant must show the following:

(1) it is a "person" within the meaning of the statute;
(2) the plaintiff's claims are based upon the defendant's conduct "acting under" a federal office;
(3) it raises a colorable federal defense; and
(4) there is a causal nexus between the claims and the conduct performed under color of a federal office.

*Feidt v. Owens Corning Fiberglas Corp.*, 153 F.3d 124, 127 (3d Cir. 1998) (citing *Mesa v. California*, 489 U.S. 121, 129 (1989)).

As to the first element of the statute, this court has held that "defendants, as corporations, are 'persons' within the meaning of [Section 1442(a)(1)]." *In re Asbestos Litig. (Seitz)*, 661 F. Supp. 2d 451, 454 (D. Del. 2009) (citing *Good v. Armstrong World Indus., Inc.*, 914 F. Supp. 1125, 1128 (E.D. Pa. 1996)). *See also Kirks v. GE*, 654 F. Supp. 2d 220, 223 (D. Del. 2009).

---

[1] The Third Circuit draws a distinction between the removal provisions of Section 1441, which "'are to be strictly construed against removal and all doubts should be resolved in favor of remand,'" *Boyer*, 913 F.2d at 111 (quoting *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987)), and the provisions of the federal officer removal statute, which are to be "broadly construed." *Sun Buick, Inc. v. Saab Cars USA, Inc.*, 26 F.3d 1259, 1262 (3d Cir. 1994).

3

To satisfy the second element, the defendant "must demonstrate that a 'federal office' was the source of the specific act for which the contractor now faces suit." *In re Asbestos Litig. (Seitz)*, 661 F. Supp. 2d at 454. "The second factor has been described as requiring 'a showing that the acts forming the basis of the state suit were performed pursuant to an officer's direct orders or comprehensive and detailed regulations.'" *Id.* (quoting *Good*, 914 F. Supp. at 1128).

The third element "requires a moving defendant to demonstrate that there is a colorable defense to a plaintiff's claims." *Id.* (citing *Megill v. Worthington Pump, Inc.*, 1999 WL 191565, at *3 (D. Del. Mar. 26, 1999)). The colorable defense asserted here is the federal common law government contractor defense. According to the Supreme Court, a federal contractor will not be liable for design defects in equipment under state tort laws when:

(1) the United States approved reasonably precise specifications;
(2) the equipment conformed to those specifications; and
(3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States.

*Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988).

Although the *Boyle* Court applied the government contractor defense to a design defect products liability claim, federal courts have subsequently recognized the applicability of the defense to state law failure to warn clams. *See, e.g.*, *MacQueen v. Union Carbide Corp.*, 2013 WL 6571808, at *3 (D. Del. Dec. 13, 2013), *report and recommendation adopted*, 2014 WL 108535 (D. Del. Jan. 9, 2014); *Walkup v. Air & Liquid Sys. Corp.*, 2013 WL 5448623, at *2 (D. Del. Sept. 26, 2013), *report and recommendation adopted*, 2013 WL 5798701 (D. Del. Oct. 24, 2013); *In re Asbestos Litig. (Seitz)*, 661 F. Supp. 2d at 454; *Kirks*, 654 F. Supp. 2d at 224-25. "However, because 'design defect and failure to warn claims differ practically as well as theoretically,' courts have required the government approval to 'transcend rubber stamping' for the defense to shield a

4

government contractor from failure to warn liability."[2] *Hagen*, 739 F. Supp. 2d at 783 (quoting

*Tate v. Boeing Helicopters*, 55 F.3d 1150, 1156-57 (6th Cir. 1995)). Consequently, in cases

involving failure to warn claims, federal courts have tailored the *Boyle* elements as follows:

> (1) the United States exercised its discretion and approved the warnings, if any;
> (2) the contractor provided warnings that conformed to the approved warnings; and
> (3) the contractor warned the United States of the dangers in the equipment's use
> about which the contractor knew, but the United States did not.

*MacQueen*, 2013 WL 6571808, at *4 (quoting *Hagen*, 739 F. Supp. 2d at 783). *See also Oliver v.*

*Oshkosh Truck Corp.*, 96 F.3d 992, 1003-04 (7th Cir. 1996); *Tate*, 55 F.3d at 1157.

The final requirement for removal under Section 1442(a)(1) is that the defendant

demonstrate a causal nexus between the conduct being supervised by the federal office and the

conduct deemed offensive in the plaintiff's complaint. *See In re Asbestos Litig. (Seitz)*, 661 F.

Supp. 2d at 455. "To do so, a defendant seeking removal must 'by direct averment exclude the

possibility that [the defendant's action] was based on acts or conduct of his not justified by his

federal duty.'" *Hagen*, 739 F. Supp. 2d at 785 (alteration in original) (quoting *Mesa*, 489 U.S. at

132).

## IV.   DISCUSSION

I recommend that the court grant Plaintiffs' Motion to Remand. In reaching this

determination, however, two related points are noted from the outset. Specifically, Plaintiffs'

disclaimer in paragraph three of the Complaint (the "jurisdictional disclaimer") has no effect on

Crane's right of removal, and Crane has asserted a colorable federal defense to certain of

Plaintiffs' claims. Thus, Crane's removal of this action was proper. Nevertheless, remand is

---

[2] This court has previously explained that in actions involving allegations of failure to warn of the
dangers of asbestos, the removing defendant "must show that whatever warnings accompanied a
product resulted from a determination of a government official, . . . and thus that the government
itself 'dictated' the content of the warnings meant to accompany the product." *In re Asbestos Litig.*
*(Seitz)*, 661 F. Supp. 2d at 455 (quoting *In re Joint E. & S. Dist. N.Y. Asbestos Litig.*, 897 F.2d 626,
630 (2d Cir. 1990)).

appropriate, pursuant to 28 U.S.C. § 1367(c), based on Plaintiffs' post-removal disclaimer of any claims relative to Mr. Dougherty's alleged exposure to asbestos during his service in the U.S. Navy and on any federal jobsites and vessels (the "claim disclaimer").

### A.  Plaintiffs' Jurisdictional Disclaimer in Paragraph Three of the Complaint

Plaintiffs contend that Crane's removal of this action was improper because they "expressly disclaimed in their Complaint any claims or relief attributable to Mr. Dougherty's service in the United States Navy." (D.I. 14 at 2) Plaintiffs' contention is without merit, for two reasons.

First, Plaintiffs' jurisdictional disclaimer is inconsistent with the allegations of the Complaint, rendering the disclaimer ambiguous. Paragraph three of the Complaint provides, in pertinent part:

> 3.      Plaintiffs hereby disclaim any cause of action or claim for recovery that could give rise to federal subject matter jurisdiction under either 28 U.S.C. § 1331 (federal question) or 28 U.S.C. § 1442, subdivision (a)(1) (federal officer). Specifically, Plaintiffs disclaim any cause of action or claim for recovery based on any exposure to asbestos on land that is, or was, a "federal enclave" . . . . Plaintiffs also disclaim any cause of action or claim for recovery based on any exposure to asbestos caused by any person or entity acting under the authority of a federal officer or agency.

(D.I. 1, Ex. 1 ¶ 3) In the immediately preceding paragraph, however, Plaintiffs claim that Mr. Dougherty was exposed to asbestos while serving in the Navy (i.e., on a federal jobsite and/or vessel). Specifically, Plaintiffs assert:

> a.      Plaintiff Francis Dougherty experienced occupational exposure to asbestos while serving as a plumber in the United States Navy from 1945-1946. He inhaled, ingested and otherwise absorbed asbestos-containing fibers emanating from various products including, but not limited to, gaskets, packing from equipment including pumps, valves and other equipment.

(*Id.* ¶ 2(a)) Thus, the disclaimer is ambiguous. On the one hand, Plaintiffs seek to hold Crane liable for the alleged asbestos exposure relating to Mr. Dougherty's work for the Navy; on the other,

Plaintiffs claim that Crane has no right to remove on the basis of a colorable federal defense. *See Despres v. Ampco-Pittsburgh Corp.*, 577 F. Supp. 2d 604, 608 (D. Conn. 2008). "Plaintiffs cannot have it both ways." *Id.*

Second, and more importantly, the majority of federal courts have found that jurisdictional disclaimers in complaints, like the one in Plaintiffs' Complaint, are ineffective to avoid federal officer removal jurisdiction. *See infra* pp. 8-9.

Courts have identified two related reasons why jurisdictional disclaimers are ineffective. "First, . . . the presumption under the federal officer removal statute favors removal, for the benefit of the federal officer involved the case." *In re Asbestos Prods. Liab. Litig. (No. VI)*, 770 F. Supp. 2d 736, 741 (E.D. Pa. 2011). "[O]ne of the most important reasons for [federal officer] removal is to have the validity of the defense of official immunity tried in a federal court." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969).

Second, federal officers may remove a case based on the existence of a federal defense that is not apparent from the claims alleged in the complaint, because the well-pleaded complaint rule applicable to federal question removal does not apply to federal officer removal. *In re Asbestos Prods. Liab. Litig. (No. VI)*, 770 F. Supp. 2d at 741-42 (citing *Jefferson County v. Acker*, 527 U.S. 423, 430-32 (1999)). In *Jefferson County*, the Supreme Court explained:

> It is the general rule that an action may be removed from state court to federal court only if a federal district court would have original jurisdiction over the claim in suit. To remove a case as one falling within federal-question jurisdiction, the federal question ordinarily must appear on the face of a properly pleaded complaint; an anticipated or actual federal defense generally does not qualify a case for removal. *Suits against federal officers are exceptional in this regard. Under the federal officer removal statute, suits against federal officers may be removed despite the nonfederal cast of the complaint; the federal question element is met if the defense depends on federal law.*

*Id.*, 527 U.S. at 430-31 (emphasis added) (citations omitted). In other words, "[b]ecause the claim giving rise to federal jurisdiction is ordinarily a state-law claim that only assumes a federal

7

character when the defendant invokes a colorable federal defense, neither the court nor the parties can identify and exclude at the outset of the case those claims that might ultimately give rise to federal jurisdiction." *Joyner v. A.C. & R. Insulation Co.*, 2013 WL 2460537, at *4 (D. Md. June 6, 2013) (citing *In re Asbestos Prods. Liab. Litig. (No. VI)*, 770 F. Supp. 2d at 742).[3]

Thus, asbestos plaintiffs' attempts at artful pleading to circumvent federal officer removal by the use of jurisdictional disclaimers have generally failed. *See, e.g.*, *In re Asbestos Prods. Liab. Litig. (No. VI)*, 770 F. Supp. 2d at 742 (holding that the plaintiffs' disclaimer purporting to exclude any claims "'caused by the acts or omissions of defendants committed at the specific and proven direction of an officer of the United States government acting in his official capacity,'" was "not effective to defeat Defendant's entitlement to a federal forum for the adjudication of the federal defense proffered"); *O'Connell v. Foster Wheeler Energy Corp.*, 544 F. Supp. 2d 51, 54 n.6 (D. Mass. 2008) (denying remand notwithstanding disclaimer of "any cause of action or recovery for any injuries resulting from exposure to asbestos dust caused by any acts or omissions of a party committed at the direction of an officer of the United States Government"); *Marley v. Elliott Turbomachinery Co.*, 545 F. Supp. 2d 1266, 1274-75 (S.D. Fla. 2008)[4] ("[P]laintiffs can[not] defeat a government contractor's right to remove by disclaiming any claim arising from any act or

---

[3] In *In re Asbestos Prods. Liab. Litig.*, Judge Robreno further explained that "[r]ecognizing [a jurisdictional] disclaimer would deprive the federal officer of the right to have the adequacy of the threshold determination [–] whether there is federal subject matter jurisdiction under the federal officer removal statute [–] made by a federal court." *Id.*, 770 F. Supp. 2d at 742-43.

[4] In *Marley*, the Court observed that jurisdictional disclaimers are "circular" because their applicability depends on a determination of the core question in a given case: whether a defendant's purported acts or omissions were required or caused by its contractual relationship with an agency/officer of the federal government. *Id.*, 545 F. Supp. 2d at 1274. If the acts or omissions were required by the agency, the disclaimer applies and the plaintiff's claims fail as a matter of law. *Id.* If the acts or omissions were not required by the agency, then the disclaimer does not apply. *Id.* "The problem with this argument is that [] defendants have the right to have this question decided in federal court." *Id.* (citing *Jefferson County*, 527 U.S. at 432).

omission compelled by a government agency. Such a circular disclaimer would defeat the purpose of § 1442(a)(1) as it would force federal contractors to prove in state court that they were acting under the direction of the government."); *Machnik v. Buffalo Pumps Inc.*, 506 F. Supp. 2d 99, 103 n.1 (D. Conn. 2007) (denying motion to remand because "even artful pleading around any federal claims cannot defeat federal subject matter jurisdiction"); *Ballenger v. Agco Corp.*, 2007 WL 1813821, at *2 (N.D. Cal. June 22, 2007) (denying motion to remand despite plaintiff's disclaimer of "any claim arising from any act or omission of the United States, . . . or a claim against any other person or entity that is based on an act that was performed under specific direction of the United States, any agency thereof or any Officer of the United States").

Consequently, Plaintiffs' jurisdictional disclaimer in paragraph three of the Complaint is ineffective to defeat federal officer removal jurisdiction.

## B. Crane's Notice of Removal and Government Contractor Defense

As an alternative basis for remand, Plaintiffs contend that Crane has failed to submit sufficient evidence to establish a colorable federal defense or satisfy the requirements for removal under Section 1442(a)(1). (D.I. 15 at 7-18) Crane counters that its affidavits and supporting materials demonstrate that the Navy exercised control over Crane's manufactured products and accompanying written materials and, consequently, the government contractor defense precludes liability under state law for Plaintiffs' claims of defective product design and failure to warn. (D.I. 22 at 9-16; *see also* D.I. 1 at 2-5)

As this court has observed in several recent cases, there is a split in authority concerning the applicable standard for assessing the colorability of a proffered government contractor defense. *See Hicks v. Boeing Co.*, 2014 WL 1051748, at *4 (D. Del. Mar. 17, 2014), *report and recommendation adopted*, 2014 WL 1391104 (D. Del. Apr. 8, 2014); *MacQueen*, 2013 WL 6571808, at *5-7; *Walkup*, 2013 WL 5448623, at *3-5. In short, the split "'boils down to an

9

argument over what a defendant must proffer to defeat a plaintiff's motion for remand.'" *Walkup*,

2013 WL 5448623, at \*4 (quoting *Hagen*, 739 F. Supp. 2d at 777).[5]

Consistent with the line of reasoning of this court in *Hicks*, *MacQueen*, and *Walkup*, and

"the trend in this Circuit to broadly construe the federal officer removal statute," *Walkup*, 2013

WL 5448623, at \*4 (citing *Kirks*, 654 F. Supp. 2d at 225-26), Crane's removal of this action should

be sustained if Crane "identifies facts which, viewed in the light most favorable to [Crane], would

establish a complete defense at trial." *Hagen*, 739 F. Supp. 2d at 783.

In order to properly establish removal under Section 1442(a)(1), Crane must show the

following:

(1) it is a "person" within the meaning of the statute;
(2) the plaintiff's claims are based upon the defendant's conduct "acting under" a
federal office;
(3) it raises a colorable federal defense; and
(4) there is a causal nexus between the claims and the conduct performed under
color of a federal office.

*Feidt*, 153 F.3d at 127 (citing *Mesa*, 489 U.S. at 129).

There is no dispute that Crane, as a corporation, is a "person" within the meaning of the

statute. *See Kirks*, 654 F. Supp. 2d at 223.

With respect to the second element, Crane has shown that Plaintiffs' design defect and

failure to warn claims associated with Mr. Dougherty's naval service are based upon Crane's

conduct "acting under" a federal office. Plaintiffs allege that Mr. Dougherty was exposed to

---

[5] In *Walkup*, this court explained:

On one side of the split, "the colorable defense standard is not an onerous one to
satisfy." For example, some courts require only that a colorable defense be
plausible in order to meet the requirements for removal under Section 1442(a)(1).
"Yet other courts . . . [—] albeit not explicitly — apply a heightened standard at the
remand stage that requires courts to 'carefully weigh the plausibility of the
proffered defense.'"

*Walkup*, 2013 WL 5448623, at \*4 (quoting *Hagen*, 739 F. Supp. 2d at 780).

asbestos "from various products including, but not limited to, gaskets, packing from equipment including pumps, valves and other equipment," while serving as a plumber in the U.S. Navy from 1945-1946. (D.I. 1, Ex. 1 ¶ 2(a)) Plaintiffs further allege that these products "were mixed, mined, manufactured, applied, sold, distributed, removed, installed or used" by the defendants,[6] including Crane. (*Id.* ¶ 5) In response, Crane has submitted the affidavits of Anthony D. Pantaleoni ("Mr. Pantalieoni"), who has served as the Vice-President of Environment, Health, and Safety for Crane since 1989 (*Id.*, Ex. 2), and retired U.S. Navy Rear Admiral David P. Sargent, Jr. ("Admiral Sargent"), who served in the Navy from 1967 to 1999 (*Id.*, Ex. 3), to demonstrate that the acts forming the basis of Plaintiffs' claims were performed pursuant to direct orders or comprehensive and detailed regulations of the office of the Navy and its officers. *See In re Asbestos Litig.* (*Seitz*), 661 F. Supp. 2d at 454.

Mr. Pantaleoni's affidavit indicates that Crane manufactured and supplied equipment, including valves, for Navy ships under contracts between Crane and the Navy, and that "[a]ll equipment supplied by Crane to the Navy was built in accordance with [] Navy specifications." (D.I. 1, Ex. 2 ¶¶ 4-6) Mr. Pantaleoni explained that the Navy specifications "governed all aspects of a piece of equipment, such as a valve's[] design and construction and specified the materials to be used, including materials such as gaskets and packing." (*Id.* ¶ 5)

Admiral Sargent's affidavit indicates that the Navy provided equipment manufacturers such as Crane with precise specifications "as to the nature of any markings, communication or directions affixed to or made a part of any equipment [they] supplied . . . for ultimate use aboard Navy ships." (*Id.*, Ex. 3 ¶ 58) Based on the content of these specifications, as well as the actual practice as it evolved in the field, Admiral Sargent explained that the manufacturers "would not

---

[6] Plaintiffs' Complaint expressly excludes from this allegation defendant Metropolitan Life Insurance Company. (*See* D.I. 1, Ex. 1 ¶ 5)

have been permitted . . . to vary or to deviate in any respect from the Navy specifications in supplying equipment, including affixing any type of warning or caution statement to equipment intended for installation in a Navy ship." (*Id.*)

The Navy similarly had precise specifications with respect to the instruction books and technical manuals accompanying such equipment. (*Id.* ¶ 59) According to Admiral Sargent, the Navy did not permit equipment manufacturers such as Crane to "include any type of warning or caution statement in instruction books or technical manuals, beyond those required and approved by the Navy without prior discussion and approval by the Navy." (*Id.* ¶ 60) Admiral Sargent stated that the Navy reviewed and approved the contents of all technical manuals, including any cautionary language or emphasis, "in an exacting manner," often making extensive line-by-line edits to such manuals and their included warnings. (*Id.*) Admiral Sargent further explained that these detailed specifications were necessary because uniformity was critical to naval operation, and inconsistent warnings would have resulted "[i]f every equipment [] manufacturer were allowed to decide on the need for, and provide its own safety and health warnings [including those related to asbestos]." (*Id.* ¶ 62)

Based upon his knowledge and experience in the field, Admiral Sargent concluded that the Navy would not have permitted equipment suppliers such as Crane to affix asbestos-related warnings on packaging or containers for valves or related parts, or in any related literature, supplied to the Navy during the relevant timeframe. (*Id.* ¶¶ 64-67)

Based on the above affidavits, Crane has satisfied its burden to show that Plaintiffs' claims associated with Mr. Dougherty's naval service are based upon Crane's conduct "acting under" the office of the Navy and its officers.

With respect to the third element of removal jurisdiction under Section 1442(a)(1), Crane has raised a colorable federal defense to Plaintiffs' claims, namely, the government contractor

defense. The government contractor defense displaces state tort law where:

(1) the United States approved reasonably precise specifications;
(2) the equipment conformed to those specifications; and
(3) the supplier warned the United States about the dangers in the use of the
equipment that were known to the supplier but not to the United States.

*Boyle*, 487 U.S. at 512. "However, because 'design defect and failure to warn claims differ

practically as well as theoretically,' courts have required the government approval to 'transcend

rubber stamping' for the defense to shield a government contractor from failure to warn liability."

*Hagen*, 739 F. Supp. 2d at 783 (quoting *Tate*, 55 F.3d at 1156-57).

The government contractor defense inquiry "is undertaken whilst viewing the facts in the

light most favorable to [Crane], and does not address the merits of the defense." *Id.* at 783-84.

In the present case, the evidence offered by Crane is adequate on its face to make a

plausible showing that the Navy approved reasonably precise specifications, and exercised

direction and control, over the design, manufacture, and accompanying manuals and warnings of

the equipment supplied by Crane. For example, Mr. Pantaleoni's affidavit indicates that all of the

equipment supplied by Crane to the Navy was manufactured pursuant to the Navy's "extensive . .

. standards and specifications," which "governed all aspects" of the equipment, including the

design and internal materials. (D.I. 1, Ex. 2 ¶¶ 4-6)

Additionally, Admiral Sargent's affidavit demonstrates that the Navy provided Crane with

precise specifications concerning written materials, such as product warnings and product

manuals, which accompanied Crane's equipment for use aboard Navy ships. (*Id.*, Ex. 3 ¶ 58)

According to Admiral Sargent, Crane "would not have been permitted . . . to vary or to deviate in

any respect from the Navy specifications in supplying equipment, including affixing any type of

warning or caution statement to equipment intended for installation in a Navy ship." (*Id.*)

Consequently, the evidence is sufficient to plausibly show that the Navy was responsible

13

for the design and manufacture of Crane's products, and exercised control that "transcend[ed] rubber stamping" over accompanying product manuals and warnings. *Hagen*, 739 F. Supp. 2d at 783.

The evidence is likewise adequate to show that Crane's products conformed to the specifications of the Navy. Indeed, Admiral Sargent stated that Crane's "[e]quipment could not have been installed aboard Navy vessels unless it was first determined by the Navy to be in conformity with all applicable Navy specifications." (D.I. 1, Ex. 3 ¶ 29) Admiral Sargent's affidavit further demonstrates that Crane acted in accordance with Navy specifications by not providing warnings because Crane was not permitted to do so without prior discussion and approval by the Navy. (*Id.* ¶¶ 60, 64-67)

Crane's evidence also satisfies the third element of the government contractor defense, which requires a contractor to have "warned the United States about the dangers in the use of the equipment that were known to the [contractor] but not to the United States." *Boyle*, 487 U.S. at 512. Notably, as the language of the third prong indicates, "a contractor is not required to warn the United States of hazards of which the United States was already aware." *Walkup*, 2013 WL 5448623, at *7. The affidavit of Samuel A. Forman, M.D. ("Dr. Forman") (D.I. 1, Ex. 4), submitted by Crane, addresses this point directly.

Dr. Forman served in the Navy as a medical officer from 1977 through 1983, and as a civilian employee of the Navy until 1986. (*Id.* ¶ 3) He currently practices as a specialist in preventative and occupational medicine, and is part of a team responsible for reviewing government documents for production in asbestos litigation. (*Id.* ¶¶ 1, 9-11) Through these experiences, Dr. Forman has acquired extensive knowledge regarding the Navy's awareness about the dangers of asbestos. In his affidavit, Dr. Forman summarized the Navy's knowledge of those dangers. (*Id.* ¶¶ 26-55) According to Dr. Forman, the Navy recognized such health hazards as early

14

as 1922, and by the 1940s had outlined steps to prevent exposure to asbestos. (*Id.* ¶¶ 27, 30-31) Dr. Forman explained that while the Navy was advised of the hazards associated with asbestos, it rejected offers for assistance with those hazards due to other concerns. (*Id.* ¶¶ 32-35)

This evidence, viewed in the light most favorable to Crane, constitutes a plausible showing that the Navy was already familiar with the dangers of asbestos, such that Crane was not obligated to apprise the Navy of those risks. Thus, Crane has satisfied the third element of the government contractor defense and, consequently, has established a colorable federal defense under Section 1442(a)(1).

As to the final element of federal officer removal jurisdiction, Crane has shown a causal nexus between Plaintiffs' claims and Crane's conduct performed under color of a federal office.[7] The design defect claim arises directly from the specifications that the Navy provided to Crane. The failure to warn claim arises directly out of the alleged involvement of the Navy in determining what warnings could be included with, or placed upon, equipment manufactured by Crane. Consequently, a causal nexus exists because Crane's liability arises from its official duties, performed in accordance with government contracts. Therefore, Crane has met the requirements of the federal officer removal statute.[8]

---

[7] In *MacQueen*, this court explained that

> the causal nexus element "is closely related to evidence supporting a colorable federal defense where a government contractor is the defendant because both elements require the defendant [to] show that it acted at the federal government's command." Accordingly, . . . "the causal nexus analysis 'is essentially the same as [that associated with] the colorable defense requirement.'"

*Id.*, 2013 WL 6571808, at *12 (alterations in original) (quoting *Hagen*, 739 F. Supp. 2d at 785).

[8] This conclusion is supported by a number of cases, including one from this District, where Crane established federal officer removal jurisdiction based on affidavits of Admiral Sargent, Mr. Pantaleoni, and Dr. Forman that were similar or identical to those proffered here. *See, e.g.*, *MacQueen*, 2013 WL 6571808, at *7-12; *Joyner v. A.C. & R. Insulation Co.*, 2013 WL 877125, at *2-9 (D. Md. Mar. 7, 2013); *Leite v. Crane Co.*, 868 F. Supp. 2d 1023, 1031-34, 1038-42 (D. Haw. 2012), *aff'd*, 749 F.3d 1117 (9th Cir. 2014).

### C. Plaintiffs' Evidence and Evidentiary Objections

In support of their Motion to Remand, Plaintiffs contend that Crane's evidence is insufficient to invoke the federal officer defense because it consists of "self-serving affidavits containing entirely untested hypotheticals." (D.I. 15 at 12) Plaintiffs also present their own contradictory evidence that, they contend, establishes that Crane was not prohibited from providing asbestos warnings with its equipment. (*Id.* at 9-18) This evidence includes the affidavit of Arnold P. Moore ("Captain Moore"), a retired Navy Captain with naval engineering experience who has been employed in the private sector for over twenty-five years as an engineer for a number of naval defense contractors. (*Id.*, Ex. 3) Captain Moore's affidavit indicates, among other things, that the Navy "relied heavily upon its manufacturers and vendors to identify hazards associated with their products" and "to provide warnings" for such hazards. (*Id.* ¶¶ 11-12)

Although Plaintiffs' evidence certainly calls into question the assertions made in the affidavits submitted by Crane, this is not the time for the court to "'dissect the facts stated . . . [or to] determine credibility, weigh the quantum of evidence or discredit the source of the defense.'" *MacQueen*, 2013 WL 6571808, at *10 (quoting *Hagen*, 739 F. Supp. 2d at 782). *See also Walkup*, 2013 WL 5448623, at *8 ("Given that [the defendant] has satisfied the removal requirements under Section 1442(a)(1), consideration of the Plaintiffs' Evidentiary Objections is not warranted at this early stage of the proceeding[]" because a federal officer is not required to "'win his case before he can have it removed.'" (quoting *Willingham*, 395 U.S. at 407)). Rather, the court's job "is merely to analyze, as a threshold matter, whether [Crane's] defense is *colorable*. And it is." *MacQueen*, 2013 WL 6571808, at *10.

### D. Plaintiffs' Post-Removal Claim Disclaimer

Following Crane's removal of this action, Plaintiffs made the following averments in support of their Motion to Remand:

"Plaintiffs have disclaimed **and hereby waive as the basis for any relief in this case" "exposures that may have occurred during Mr. Dougherty's service in the United States Navy from 1945-1947.**" (D.I. 14 at 2 (emphasis added))

"To the extent necessary, **Plaintiffs also hereby waive all claims against Crane stemming from Mr. Dougherty's asbestos exposure from any federal government job site, and aboard Navy ships or any other military vessel.**" (D.I. 15 at 4)

Plaintiffs contend that the "disclaimer [in the Complaint], coupled with [their] further explicit waiver [] of any causes of action relating to Mr. Dougherty's work in the Navy, is sufficient to defeat defendant Crane's removal under the federal officer removal statute." (D.I. 15 at 2)

It is unclear whether Plaintiffs offer these statements in order to clarify the jurisdictional disclaimer in the Complaint, or as an additional, separate waiver. Nevertheless, the court rejects the proposition that Plaintiffs' post-removal statements should be considered in conjunction with the jurisdictional disclaimer in the Complaint for purposes of evaluating the propriety of Crane's removal. *See generally Rosa v. Resolution Trust Corp.*, 938 F.2d 383, 392 n.12 (3d Cir. 1991) ("It is a firmly established rule that subject matter jurisdiction is tested as of the time of the filing of the complaint." (citations omitted)).

In the court's view, Plaintiffs' post-removal assertions are substantively distinct from the jurisdictional disclaimer and, as such, are construed collectively as a separate, post-removal claim disclaimer. Contrary to Plaintiffs' argument, the claim disclaimer is not sufficient to "defeat" Crane's removal under the federal officer statute because it was asserted *after* Crane filed its notice of removal and through a motion to remand. However, the claim disclaimer's substantive effect on this case warrants further discussion.

While courts in this Circuit have not previously addressed express claim disclaimers (as contrasted with jurisdictional disclaimers, *see In re Asbestos Prods. Liab. Litig. (No. VI)*, 770 F.

17

Supp. 2d at 740-43)[9] in the context of asbestos actions, a number of federal courts in other circuits have considered the issue. A review of the relevant case authorities reveals that courts recognize a distinction between artful pleading for purposes of circumventing federal officer jurisdiction, and express disclaimers of the claims that serve as the grounds for removal under Section 1442(a)(1). In the latter case, federal courts have consistently granted motions to remand where the plaintiff expressly disclaimed the claims upon which federal officer removal was based.

For example, in *Westbrook v. Asbestos Defendants (BHC)*, 2001 WL 902642 (N.D. Cal. July 31, 2001), the U.S. District Court for the Northern District of California granted the plaintiffs' motion to remand, in part, based on a written claim disclaimer. *Id.* at *3. The action had initially been removed by a defendant asserting the government contractor defense in response to allegations in the complaint that the plaintiff was exposed to asbestos on Navy ships while working at the defendant's facility, among other locations. *Id.* at *1-2.

In granting the plaintiffs' motion to remand, the court reasoned:

. . . [P]laintiffs have asserted, in writing in the state court action, that: "Plaintiff's claims against [the removing defendant], exclude plaintiff's asbestos exposure at military and federal government jobsites and aboard U.S. Navy vessels." To the extent this "stipulation" (as plaintiffs call it) is binding, [the defendant's] ground for removal is eviscerated. If plaintiffs' claims arise only from work done on private ships, not under the direction of any federal officers, [the defendant's] military contractor defense is unavailable.

___

[9] In the present case, Plaintiffs' claim disclaimer purports to exclude any claims arising out of Mr. Dougherty's asbestos exposure on federal jobsites, Navy ships, and military vessels – irrespective of whether the claims could give rise to a federal defense, and irrespective of whether the exposure was caused by any person or entity acting under the authority of a federal officer or agency. (*See* D.I. 14 at 2; D.I. 15 at 4) Furthermore, Plaintiffs assert that their claims are premised on exposures at non-federal, private locations. (*See* D.I. 15 at 13) In contrast, the plaintiffs' disclaimer in *In re Asbestos Prods. Liab. Litig. (No. VI)* purported to exclude any claims of asbestos exposure "'caused by the acts or omissions of defendants committed at the specific and proven direction of an officer of the United States government acting in his official capacity.'" *Id.*, 770 F. Supp. 2d at 740 (citation omitted). This disclaimer is far more limited and is contingent on the Navy's contractual limitations and specifications. Additionally, the only claims asserted against the defendant were based exclusively on asbestos exposure at federal jobsites. *Id.* at 742.

The question then is whether plaintiffs' written waiver is sufficient. . . . The court sees no reason not to hold plaintiffs in this case to their waiver of claims arising out of work done on federal jobsites and vessels. This waiver, therefore, justifies remand. If plaintiffs later attempt to reverse course, and are allowed to do so by the state court despite their express waiver, [the defendant] can always file for removal once again.

*Id.* at *2-3 (citations omitted).

Similarly, in *Hopkins v. Buffalo Pumps, Inc.*, 2009 WL 4496053 (D.R.I. Dec. 1, 2009), the U.S. District Court for the District of Rhode Island granted the plaintiffs' motion to remand because it determined that the removing defendant could not assert a federal defense to claims of asbestos exposure that the plaintiffs deliberately chose not pursue. *Id.* at *6. There, the plaintiffs' complaint had limited their causes of action to asbestos exposure that occurred on two non-federal jobsites.[10] *Id.* at *1, 5. Prior to removal, however, plaintiffs served defendants with discovery responses that included an exposure chart. *Id.* at *1. The chart indicated that the plaintiff "was exposed to asbestos-containing products while employed with New York Shipbuilding in Camden, New Jersey from 1942 to 1944," and "generally identif[ied] the products in issue (including boilers, insulation, pumps, turbines, etc.) and name[d] four Naval combat ships (cruisers and carriers) he worked on at New York Shipbuilding by name, hull code and number." *Id.* at *5.

One of the defendants removed the case, asserting the government contractor defense on the basis that it manufactured boilers and other equipment for use on Navy ships, including those ships identified in the plaintiffs' exposure chart, pursuant to contracts and specifications executed by the Navy. *Id.* at *1, 5-6. The plaintiffs filed a motion to remand, arguing that they expressly

---

[10] Specifically, the complaint alleged that one of the plaintiffs "'was exposed to various asbestos containing products through the use of products manufactured, sold or distributed by the named defendants with such exposure as these named defendants' products occurring as a laborer and maintenance worker at Mobil Oil from 1946-1966 and Tucson Gas & Electric . . . from 1966-1979.'" *Hopkins*, 2009 WL 4496053, at *1 (alteration in original).

excluded from the complaint "any claims for exposure while working with [the removing defendant's] products on Naval ships at New York Shipbuilding from 1942 to 1944." *Id.* at *6.

> In granting remand, the court cited *Westbrook* and explained:

> Plaintiffs here, as in *Westbrook*, disclaimed claims against [the removing defendant] arising out of work on Navy ships. [The defendant] is correct that the focus should be on the existence of a colorable federal defense and not on Plaintiffs' Complaint. However, [the defendant] premised removal on the assumption that Plaintiffs were suing, at least in part, for claimed exposure to asbestos for work on Navy ships at New York Shipbuilding. Plaintiffs' Complaint makes clear that their claim is limited to specific locations other than New York Shipbuilding. Thus, Plaintiffs are not pursuing a claim against which [the defendant] has shown the existence of a colorable federal defense. As noted by the Court in *Westbrook*, if Plaintiffs reverse course in the future and attempt to assert a claim based on claimed exposure at New York Shipbuilding, [the defendant] can file a renewed notice of removal under 28 U.S.C. § 1442 at that time.

*Hopkins*, 2009 WL 4496053, at *7 (citations omitted).

In *Frawley v. Gen. Elec. Co.*, 2007 WL 656857 (S.D.N.Y. Mar. 1, 2007), a husband and wife sought damages from a number of defendants for injuries caused by the husband's alleged exposure to asbestos. *Id.* at *1. One of the defendants, GE, removed the case under the federal officer removal statute after learning that the husband was allegedly exposed to asbestos while working as a civilian employee for the Navy. *Id.* The husband had worked on two ships, "both of which carried asbestos-containing steam turbines built by GE pursuant to government contract." *Id.* Shortly after removal, the plaintiffs amended their complaint as a matter of right, pursuant to Fed. R. Civ. P. 15(a), to delete all allegations against GE relative to the husband's naval exposure, and filed a motion to remand. *Frawley*, 2007 WL 656857, at *2.

GE opposed the motion, arguing that remand was precluded because its initial removal of the case was proper. *Id.* at *3. GE further argued that it was subject to potential cross-claims from co-defendants seeking contribution on the theory that GE's products were responsible for the

plaintiffs' injuries, which "would insert the issue of GE's federal contractor immunity right back

into the case." *Id.* at \*4.

The court rejected both arguments. The court reasoned that, "[c]ontrary to GE's assertion, .

. . a properly removed case *can* be remanded to the state court after the complaint is amended to

remove the allegations that made removal proper." *Id.* at \*3 (citing *Carnegie-Mellon University v.*

*Cohill*, 484 U.S. 343 (1988)). The court further explained:

> . . . [T]he potential for cross-claims that will be subject to a government contractor
> defense does not necessarily mean that this court ought to retain jurisdiction over
> what is essentially a state court matter. In other contexts, defenses and
> counterclaims to state law causes of action, and even cross-claims between various
> defendants, present issues of federal law. But removal is not available to deal with
> federal issues that arise in counterclaims and cross-claims. As a result, state courts
> deal with issues of federal law all the time.
>
> Federal actor removal represents an exception to the usual rule that the
> existence of a federal defense does not confer federal jurisdiction. But once the
> plaintiffs' claim against a government contractor is out of the case, it stretches the
> principle for a federal court to retain the case against the possibility that
> cross-claims will be pled. If plaintiff had not originally pleaded failure to warn and
> to maintain a safe workplace claims against GE arising out of his work for the
> Navy, GE could not have removed the case to this court pursuant to the federal
> officer removal statute, even though the potential for cross-claims implicating
> federal interests would have existed. GE would have had to assert its government
> contractor defense to those cross claims in the state court.

*Id.* at \*4 (citation omitted). Ultimately, the court determined that remand was appropriate and

granted the plaintiffs' motion.[11] *Id.* at \*5-6.

In *Joyner v. A.C. & R. Insulation Co.*, 2013 WL 877125 (D. Md. Mar. 7, 2013),

*reconsideration denied,* 2013 WL 2460537 (D. Md. June 6, 2013), the U.S. District Court for the

---

[11] Because Plaintiffs' disclaimer excluded only the claims against GE, the court deferred remand
for a short period of time in order to allow other defendants to notify the court if they intended to
assert a government contractor defense to the plaintiffs' claims. *Frawley*, 2007 WL 656857, at \*6.
The court reasoned that "considerations of fairness would weigh heavily in favor of retaining this
case if there are other government contractor defendants, because those defendants have by now
lost their right to remove the case due to the passage of time." *Id.*

District of Maryland granted the plaintiff's motion to remand based on the plaintiff's post-removal waiver of claims. *Id.*, 2013 WL 2460537, at *1.

Initially, the complaint asserted claims for exposure to asbestos-containing products, including valves, during the plaintiff's service in the U.S. Coast Guard, and gaskets, during his employment as a civilian electrician. *Id.*, 2013 WL 877125, at *1-3. Some of the valves and gaskets were allegedly manufactured by defendant Crane (the same defendant here). *Id.* The complaint, however, "expressly disclaimed 'any federal cause of action or any claim that would give rise to federal jurisdiction.'" *Id.* at *1 (citation omitted).

Crane removed the action pursuant to the federal officer removal statute, claiming it was entitled to the government contractor defense because it designed, manufactured and supplied its valves "pursuant to precise contracts and specifications approved by the Navy" for use by the Coast Guard. *Id.* at *2. The plaintiff filed a motion to remand. *Id.* at *1, 2. The court found that Crane had established a colorable federal defense under Section 1442(a)(1) and, thus, denied remand as to Crane.[12] *Id.* at *9, 11.

The plaintiff subsequently filed a "notice of abandonment of claims [related to Crane's valves] and request for remand." *Id.*, 2013 WL 2460537, at *1. In response to procedural objections by Crane, the plaintiff also proposed the following amendment to paragraph two of the complaint:

> Plaintiff makes no claims for recovery nor asserts any theories of liability against Crane Co. for its valves. Plaintiff's . . . claims against Crane Co. are confined to its manufacture, sale, distribution and marketing of [] gaskets.

---

[12] The plaintiff had also filed a motion to sever in addition to the motion to remand. *Joyner*, 2013 WL 877125, at *1. The court granted the motion to sever the plaintiff's claims against Crane from his claims against the other defendants and, thus, remanded the case as to those defendants. *Id.* at *10.

*Id.* at *4. Crane opposed the amendment, arguing that it was "a bald attempt 'to disclaim any facts or claims that might invoke federal jurisdiction.'" *Id.* (citation omitted). According to Crane, the provision was no more effective than the initial disclaimer the plaintiff's complaint, which purported to renounce any claims that could give rise to federal jurisdiction. *Id.*

The court rejected Crane's argument, finding "significant differences[] . . . between the jurisdictional disclaimer [initially asserted] and the [proposed] claim disclaimer in paragraph two." *Id.* The court reasoned:

> . . . Here, a federal court has already deemed Crane Co.'s federal defense with respect to its valves to be colorable, and that determination has led [the plaintiff] to drop the valve claim. Crane Co. cannot reasonably maintain that it will suffer prejudice if [the plaintiff] elects not to seek damages for injuries that Crane Co. allegedly caused. The claim disclaimer also will not shift Crane Co.'s damages onto the other defendants. Even if [the plaintiff] is permitted to disclaim any damages related to Crane Co.'s valves, the other defendants may argue to the state-court jury that those valves caused or contributed to [the plaintiff's] mesothelioma. The jury would then be charged with determining the extent to which the valves caused his injuries, and [the plaintiff] would not be entitled to any monetary damages for the valve-related injuries. In other words, the claim disclaimer would simply prevent [the plaintiff] from collecting any damages caused by his exposure to Crane Co. valves.
>
> . . . .
>
> The validity of Crane Co.'s federal defense with respect to the valves therefore would be immaterial, as Crane Co. would no longer face liability related to its valves. And because Crane Co.'s co-defendants/cross-claimants cannot seek contribution from Crane Co. for injuries caused by its valves if no damages are awarded for those injuries, the validity of Crane Co.'s federal defense would be immaterial to the cross-claims as well.

*Id.* at *5. Consequently, the court granted the plaintiff's "notice of abandonment of claims," which was "treated as a motion to amend the complaint," and granted the plaintiff's motion to remand. *Id.* at *7.

The authorities discussed above represent only a portion of a larger group of asbestos cases in which courts have given effect to express claim disclaimers. *See, e.g.*, *Phillips v. Asbestos Corp. Ltd.*, 2014 WL 794051, at *2 (N.D. Cal. Feb. 26, 2014) ("[Plaintiff] has expressly disclaimed and

waived any claim arising out of or related to any asbestos exposure aboard federal jobsites and navy vessels. This removes any claims to which military contractor immunity might act as a defense."); *Schulz v. Crane Co.*, 2014 WL 280361, at *1-2 (E.D. Cal. Jan. 23, 2014) (holding that plaintiff's waiver of claims "arising out of or related to asbestos exposure to or on military or federal government aircraft" precluded federal officer removal); *Lara v. CBS Corp.*, 2013 WL 4807168, at *1 (C.D. Cal. Sept. 6, 2013) (granting remand over defendant's objection that the plaintiffs' claim disclaimer was non-binding because "[t]he form of plaintiffs' post-removal waiver [did] not undercut its effectiveness"); *Kuhnau v. Allied Packing & Supply, Inc.*, 2013 WL 3187650, at *1 (N.D. Cal. June 21, 2013) (granting remand, conditioned upon the plaintiffs' filing of a proposed disclaimer that waived all claims arising out of "exposure to asbestos at any military and/or federal government jobsites, including, but not limited to exposure which occurred aboard any United States Navy Vessels and/or United States Navy Shipyards"); *Lockwood v. Crane Co.*, 2012 WL 1425157, at *1-2 (C.D. Cal. Apr. 25, 2012) (holding that plaintiff's waiver of any claims "relating to or arising out of plaintiff's asbestos exposure at military and federal government jobsites or from U.S. military or other government vessels," filed shortly after removal, was sufficient to justify remand); *Pratt v. Asbestos Corp. Ltd.*, 2011 WL 4433724, at *1-2 (N.D. Cal. Sept. 22, 2011) ("Plaintiff's waiver has rendered any federal defenses moot. There must be claims against which a federal defense is cognizable, and Plaintiff's waiver has removed any such claims."); *Powers v. Allis-Chalmers Corp. Prod. Liab. Trust*, 2010 WL 2898287, at *2 (N.D. Cal. July 21, 2010) (holding that the plaintiff's signed declaration waiving claims "arising out of or related to asbestos exposure to or on military or federal government aircraft" precluded federal officer removal); *Madden v. A.H. Voss Co.*, 2009 WL 3415377, at *2 (N.D. Cal. Oct. 21, 2009) (granting remand based on the plaintiff's claim disclaimer, and request to dismiss a particular defendant, relative to allegations of "asbestos exposure at military and federal government jobsites

24

and aboard U.S. Navy vessels"); *Debrocke v. Allis-Chalmers Corp. Prod. Liab. Trust*, 2009 WL 1464153, at *2 (N.D. Cal. May 26, 2009) (granting remand where the plaintiffs "expressly disclaimed and waived [in the complaint] any claim arising out of or related to any asbestos exposure aboard federal jobsites and navy vessels").

Notably, the parties have not identified, nor is the court aware of, any case in which a federal court has rejected on the merits an express disclaimer of claims relating to asbestos exposure on federal jobsites and military vessels/aircrafts.

The only case that could be construed as contrary authority is *Morgan v. Bill Vann Co., Inc.*, 2011 WL 6056083 (S.D. Ala. Dec. 6, 2011). But *Morgan* is distinguishable. There, the plaintiff in an asbestos action sought remand because he had disclaimed in the complaint "any claim arising from an act or omission . . . by any officer of the United States or any agency or person acting under him/her under color of such office." *Id.* at *9. The U.S. District Court for the Southern District of Alabama found that the jurisdictional disclaimer was "legally ineffective to extinguish the defective design claims" in the complaint, which had given rise to the federal officer defenses asserted by the removing defendants. *Id.*

However, in the plaintiff's reply brief in support of remand – which the court noted was "filed some two months post-removal" – the plaintiff "announce[d] a present intent to disclaim all design defect claims against [the removing defendants]." *Id.* at *9 n.14. The court rejected the plaintiff's attempt to waive such claims in order to avoid federal jurisdiction, explaining:

> Under any reasonable reading of [the notice of removal], the removing defendants were predicating removal on the existence of a colorable federal defense to plaintiff's defective design claims. Thus, at the time he filed his Motion to Remand, plaintiff knew of the central importance of the defective design issue to the removal petition, yet he remained silent as to his purported disclaimer until filing his reply brief, long after the fact.
>
> . . . .
> . . . Far from evincing a disclaimer of design defect claims against [the removing defendants], plaintiff's Motion to Remand and incorporated brief unequivocally

> expressed his intent to pursue exactly that category of claims against those
> removing defendants, notwithstanding their invocation of the federal officer
> removal statute. Having emphatically committed himself in his Motion to Remand
> to proceeding on a design defect theory against [the removing defendants], [the
> plaintiff] cannot be heard to argue in his reply brief that the disclaimer in his
> Complaint confirms that he was never pursuing such claims against these
> defendants in the first place.[13]

*Id.* at *10 & n.15.

Accordingly, *Morgan* is an inapposite because it was based not on the merits of the

plaintiff's disclaimer, but instead on "[b]asic principles of equity and fairness [that] preclude[d]

plaintiff from proceeding in such fashion." *Id.* at *10 n.16. As a related point, it should be noted

that district courts in Alabama have suggested in other asbestos cases that they would grant remand

if presented with a proper claim disclaimer. *See, e.g.*, *Kite v. Bill Vann Co., Inc.*, 2011 WL

4499345, at *2 (S.D. Ala. Sept. 29, 2011) (denying remand, but noting that, "[h]ad the plaintiff

disclaimed any claim arising from exposure aboard a Navy vessel or while on a military

installation, he might well have prevailed on his [disclaimer] argument. . . . The plaintiff's

disclaimer, however, is much more limited."); *Corley v. Long-Lewis, Inc.*, 688 F. Supp. 2d 1315,

1335-36 (N.D. Ala. 2010) (same).

Here, Plaintiffs' post-removal claim disclaimer is substantially similar (and in some

instances, identical) to the disclaimers that were determined to be effective in the cases discussed

above. Although the means by which Plaintiffs assert the claim disclaimer lack the procedural

---

[13] The court in *Morgan* further reasoned that the plaintiff had "effectively announced a 'gotcha' on
defendants by disclaiming any intent to bring design defect claims against them in the first
place, *after* forcing defendants to address the merits of § 1442(a)(1) removal of those design
defect claims at great length in their opposition brief. Basic principles of equity and fairness
preclude plaintiff from proceeding in such fashion." *Morgan*, 2011 WL 6056083, at *10 n.16
(citation omitted).

formality of Federal Rules of Civil Procedure 15 & 41,[14] Crane has not asserted any procedural objections to Plaintiffs' attempt to abandon their claims.[15] *Cf. Joyner*, 2013 WL 2460537, at *2-5.[16] Consequently, under the facts of this case, the court finds no reason to depart from the rationale behind numerous rulings of district courts in other circuits finding such claim disclaimers effective.

### E. Whether Remand is Appropriate

Having determined that Plaintiffs' post-removal claim disclaimer effectively waives any claims of asbestos exposure attributable to Mr. Dougherty's naval service, the court must decide whether remand is appropriate. A post-removal claim disclaimer does not compel automatic remand. As the Court in *Frawley* explained, "whether to retain a removed case after post-removal dismissal of all claims that made the case properly removable presents an entirely different issue than whether removal was proper in the first place – an issue that is decided in accordance with entirely different principles." *Id.*, 2007 WL 656857, at *3 (citation omitted).

The relevant authority addressing this issue is 28 U.S.C. § 1367, which governs the court's exercise of supplemental jurisdiction. Under Section 1367, federal courts with original jurisdiction over a federal claim have supplemental jurisdiction over state-law claims that form "part of the same case or controversy." 28 U.S.C. § 1367(a). A district court may, however, decline to exercise

---

[14] Indeed, Plaintiffs simply insert the claim disclaimer into briefs filed in support of the pending Motion (*see* D.I. 14 at 2; D.I. 15 at 4), rather than seeking leave to amend the Complaint, filing a stipulation or limited voluntary dismissal, or otherwise.

[15] Crane does not discuss Plaintiffs' post-removal disclaimer at length, and simply argues: "In addition to the 'disclaimer' in the complaint, Plaintiffs' memorandum includes an additional waiver, which is also ineffective." (D.I. 22 at 6)

[16] In *Joyner*, Crane objected to the plaintiff's "notice of abandonment" on the grounds that it was procedurally improper, among other things. *Id.*, 2013 WL 2460537, at *2. Crane's argument ultimately led the plaintiff to propose an amendment to the complaint pursuant to Fed. R. Civ. P. 15. *Joyner*, 2013 WL 2460537, at *4-5.

supplemental jurisdiction over state-law claims if "the district court has dismissed all claims over which it has original jurisdiction."[17] 28 U.S.C. § 1367(c)(3). In this regard, the Third Circuit has instructed that, "'where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.'" *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)).[18] *See also Carnegie-Mellon*, 484 U.S. at 351 (explaining that, where the federal claims are eliminated early in a case, "the District Court ha[s] a powerful reason to choose not to continue to exercise jurisdiction").

In the present case, original jurisdiction was established when the court determined that Crane had a colorable federal defense to the claims traceable to Mr. Dougherty's naval service. *See Mesa*, 489 U.S. at 136.[19] Once the court exercised original jurisdiction over those claims, the court also had supplemental jurisdiction over Plaintiffs' state-law claims because all of the claims are

---

[17] *See also New Rock Asset Partners, L.P. v. Preferred Entity Advancements*, 101 F.3d 1492, 1508 (3d Cir. 1996) (explaining that dismissal of the jurisdiction-granting claim "triggers a discretionary decision on whether jurisdiction over a state law claim should be declined pursuant to § 1367(c)(3)").

[18] "While § 1367(c) does not specify what disposition the district court is to make of state claims it decides not to hear, based on the teachings of [the Supreme Court], we believe that in a case that has been removed from a state court, *a remand to that court is a viable alternative* to a dismissal without prejudice." *Borough of W. Mifflin*, 45 F.3d at 788 (emphasis added) (citing *Carnegie-Mellon*, 484 U.S. at 343).

[19] In *Mesa*, the Supreme Court explained that Section 1442(a) does not furnish an independent ground for federal jurisdiction absent some federal question implicated either in the claim or by way of a defense:

> It is the raising of a federal question in the officer's removal petition that constitutes the federal law under which the action against the federal officer arises for Art. III purposes. The removal statute itself merely serves to overcome the "well-pleaded complaint" rule which would otherwise preclude removal even if a federal defense were alleged.

*Mesa*, 489 U.S. at 136 (citations omitted).

clearly "so related" as to be "part of the same controversy." 28 U.S.C. § 1367(a). Plaintiffs, however, have waived the claims underlying the court's original jurisdiction. Consequently, the court must decline to decide the remaining state-law claims "unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.'" *Hedges*, 204 F.3d at 123 (quoting *Borough of W. Mifflin*, 45 F.3d at 788).

Plaintiffs have requested remand in order to litigate their causes of action in state court rather than federal court. Crane, on the other hand, asserts a number of affirmative justifications for keeping the case in federal court, of which two remain relevant.[20]

Crane contends that the purpose of Plaintiffs' disclaimer is "jurisdictional manipulation." (D.I. 22 at 1) Crane further argues that it could face cross-claims from co-defendants seeking contribution for damages traceable to Mr. Dougherty's naval exposure – notwithstanding Plaintiffs' claim disclaimer – and "because Crane [] has a colorable federal defense [to such claims], it would raise that defense to all-cross claims filed in state court, which could lead to a cycle of removals and further attempts to remand." (*Id.* at 18; *see also id.* at 4)

Neither of Crane's arguments are compelling. As to jurisdictional manipulation, the Supreme Court in *Carnegie-Mellon* explained that, in addition to considerations of judicial economy, convenience, and fairness to the parties:

> A district court can consider whether the plaintiff has engaged in any manipulative tactics when it decides whether to remand a case. If the plaintiff has attempted to manipulate the forum, the court should take this behavior into account in determining whether the balance of factors to be considered under the pendent jurisdiction doctrine support a remand in the case.

*Carnegie-Mellon*, 484 U.S. at 357. *See also Trans Penn Wax Corp. v. McCandless*, 50 F.3d 217, 233 (3d Cir. 1995). However, "*Carnegie-Mellon* [] does not suggest that a plaintiff's desire to

---

[20] Crane's affirmative justifications for keeping this action in federal court are directed, in large part, to arguments against severing Plaintiffs' federal claims from their state claims. (*See* D.I. 22 at 1-4, 16-18)

avoid a federal forum prevents a district court from exercising its discretion to remand pendant claims. Instead, it requires only that the plaintiff's forum-manipulating motivation be considered in weighing the factors relevant to remand." *Datto v. Thomas Jefferson Univ.*, 2009 WL 577458, at *3 (E.D. Pa. Mar. 4, 2009).

Contrary to Crane's assertion, it is not clear that the purpose of Plaintiffs' disclaimer is jurisdictional manipulation. Crane has not pointed to any evidence of an improper motive, and the facts do not support such a conclusion. Indeed, Plaintiffs filed their Motion to Remand less than one month after Crane filed its notice of removal. (*See* D.I. 14) Furthermore, Plaintiffs have maintained from the outset that they never made a claim subject to federal jurisdiction.[21] (*See* D.I. 14 at 2; D.I. 15 at 4, 13) While the court ultimately found that Plaintiffs' legal position was not correct, it does not necessarily follow that seeking remand via claim disclaimer was impermissible forum manipulation. *See Ortiz v. Univ. of Med. & Dentistry of N.J.*, 2009 WL 2194782, at *3 (D.N.J. July 23, 2009). *See also Zokaites v. Equifax Info. Servs., LLC*, 2012 WL 993269, at *3 (W.D. Pa. Mar. 22, 2012) ("Although plaintiff's conduct could be attributable to improper motives, it is equally plausible that he has simply made the sensible decision not to pursue a meritless federal claim.").

Crane's argument concerning cross-claims is similarly unpersuasive for the reasons identified in *Joyner*, where the same argument – also asserted by Crane – was rejected:

> . . . Crane Co. also submit[s] that the defendants' cross-claims give rise to federal jurisdiction. On this view, [the plaintiff's] abandonment of his valve claim against Crane Co. does not extinguish the co-defendants' cross-claims against Crane Co. with respect to its valves. Yet this argument reflects a fundamental misunderstanding of the nature of a claim for contribution. The defendants' cross-claims for contribution are derivative of [the plaintiff's] suit and, ultimately,

---

[21] *Cf. Morgan*, 2011 WL 6056083, at *10 & nn.15-16 (rejecting the plaintiff's disclaimer as an unfair, "gotcha" argument, because plaintiff sought to abandon particular claims *after* he "unequivocally expressed his intent to pursue exactly that category of claims").

the damages, if any, that he recovers; a defendant may only seek contribution for damages imposed on that defendant. In other words, if [the plaintiff] never recovers damages for injuries caused by Crane Co.'s valves, neither Crane Co. nor the other defendants can maintain a cross-claim for contribution related to those injuries. And because [the plaintiff] has dropped his valve claim and therefore cannot recover damages for any injuries caused by Crane Co.'s valves, it follows that [plaintiff's] disclaimer of all such damages necessarily extinguishes all cross-claims that are derivative of those injuries.

*Joyner*, 2013 WL 2460537, at *7.[22] *See also Frawley*, 2007 WL 656857, at *4 ("If plaintiff had not originally pleaded . . . claims against GE arising out of his work for the Navy, GE could not have removed the case to this court pursuant to the federal officer removal statute, even though the potential for cross-claims implicating federal interests would have existed.").

In the present case, the facts and circumstances weigh heavily in favor of remand. This litigation is in its early stages and there has been relatively little time and resources expended in federal court. There is no indication that it would be inconvenient to resolve this matter in state court. Additionally, Plaintiffs' remaining claims fall under state law, favoring remand. If Plaintiffs later attempt to reverse course, and are allowed to do so by the state court despite their express claim disclaimer, Crane can seek removal once again. *See Westbrook*, 2001 WL 902642, at *3. Consequently, the court "must decline to decide the pendent state claims," and Plaintiffs' Motion to Remand should be granted. *Borough of W. Mifflin*, 45 F.3d at 788.

## V. CONCLUSION

For the foregoing reasons, I recommend that the court grant Plaintiffs' Motion to Remand.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections

---

[22] *See also Joyner*, 2013 WL 2460537, at *5 (explaining that, "because Crane Co.'s co-defendants/cross-claimants cannot seek contribution from Crane Co. for injuries caused by its valves if no damages are awarded for those injuries, the validity of Crane Co.'s federal defense would be immaterial to the cross-claims as well.").

within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. Appx. 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: July, 16 2014

Sherry R. Fallon
United States Magistrate Judge

32